**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| DAVID R. LINFOOT, | ) |
|         Plaintiff, | )  No. 03:12-cv-00799-HU |
| vs. | ) |
| EDWARD P. BERNARDI and JESSE NEAL SPENCER, individually and *dba* BERNARDI & SPENCER; and OREGON COLLECTIONS, INC., an Oregon corporation; | ) **FINDINGS AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT** |
|         Defendants. | ) |

_____

David R. Linfoot
2014 NE 53rd Avenue
Portland, OR 97213

    Plaintiff *pro se*


Katie Jo Johnson
Jonathan M. Radmacher
McEwen Gisvold LLP
1100 SW Sixth Avenue
Portland, OR 97204

    Attorneys for Defendants

1 - FINDINGS AND RECOMMENDATION

HUBEL, United States Magistrate Judge:

*Pro se* plaintiff David R. Linfoot brings this action against the defendants Edward P. Bernardi and Jesse Neal Spencer, individually and doing business as Bernardi & Spencer; and Oregon Collections, Inc. ("OCI"); alleging the defendants violated his rights under the federal Fair Debt Collection Practices Act ("FDCPA") and the Oregon Unlawful Debt Collection Practices Act ("OUDCPA"), in connection with a default judgment the defendants obtained in 2007, and their subsequent efforts to execute on the judgment. Linfoot "seeks an order barring further prosecution of the State Court action," a declaratory judgment that the state judgment is "void and unenforceable" because it was obtained fraudulently, damages for violation of the FDCPA and OUDCPA, punitive and exemplary damages for "egregiously insidious" conduct, and damages for intentional infliction of emotional distress. Dkt. #2, Complaint.

The matter currently before the court is the defendants' motion for summary judgment. Dkt. #14; *see* Dkt. #15 - Memorandum, and Dkt. #16, Declaration of Jesse Neal Spencer & Exhibits. Linfoot has responded to the motion, Dkt. #21, and the defendants have replied, Dkt. #22. The defendants requested oral argument; however, the court finds oral argument would not assist the court in ruling on the motion. The undersigned submits the following Findings and Recommendation for disposition of the case pursuant to 28 U.S.C. § 636(b)(1)(B).

/ / /

/ / /

/ / /

2 - FINDINGS AND RECOMMENDATION

### *SUMMARY JUDGMENT STANDARDS*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002) (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S. Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 528 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be

```
         drawn in its favor.  Id. at 255, 106 S. Ct.
              2505.
```

*In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).

### ***BACKGROUND FACTS***

The individual defendants Edward P. Bernardi and Jesse Neal Spencer are Oregon attorneys, and general partners in the law firm of Bernardi & Spencer. Dkt. #13, Answer, ¶ 10. OCI is an Oregon corporation, of which Messrs. Bernardi and Spencer are shareholders and officers. *Id.*, ¶¶ 7-9. This case arises from the defendants' actions in *Oregon Collections, Inc. v. Linfoot*, No. 0702-01571, filed in the spring of 2007, in the Circuit Court for Multnomah County, Oregon (the "State Case").

In his Complaint, Linfoot alleges OCI is a "false front" operated by Bernardi & Spencer, for purposes of adding "an air of legitimacy to [their] improper and illegal collection activities[.]" *Id.*, ¶ 16. Linfoot claims OCI frequently initiates litigation to collect debts from consumers without first making any bona fide effort to collect the debts. *Id.*, ¶ 17. He also alleges OCI engages in "unscrupulous and illegal collection tactics," including, *inter alia*, failing to verify debts upon request, and the commission of "fraud upon the courts." *Id.*, ¶ 18.

Linfoot claims that "[o]n or about March 25, 2007," he became aware the defendants were attempting to collect an alleged debt from him, on behalf of a third party. Dkt. #2, ¶ 19. He claims he sent the defendants correspondence on March 28, 2007, requesting validation of the alleged debt. *Id.*, ¶ 20; *see id.*, Ex. 1. He

4 - FINDINGS AND RECOMMENDATION

alleges the defendants never validated the debt as required by law, and instead, Bernardi & Spencer, acting as attorneys for OCI, initiated the State Case against him. *Id.*, ¶ 23. Linfoot maintains he was never properly served with process in the State Case, but the defendants fraudulently claimed he had been properly served. *Id.*, ¶ 24.

When Linfoot failed to appear in the State Case, Bernardi & Spencer obtained a General Judgment of Default against Linfoot on OCI's behalf, which judgment was entered on July 2, 2007. *Id.* Linfoot subsequently filed for protection under Chapter 13 of the Bankruptcy Code. In his bankruptcy schedules, filed in the Bankruptcy Court on November 24, 2009, Linfoot listed the judgment lien created by the judgment in the State Case on his list of secured creditors. *See* Dkt. #16-2. He also included the judgment lien in his Chapter 13 Plan. *See* Dkt. #16-3. The Bankruptcy Court's records reflect that Linfoot's Chapter 13 Plan was confirmed on January 8, 2010. Paragraph 12 of the Plan required Linfoot "to either obtain a reverse mortgage on his personal residence or sell the residence by March 31, 2011." When Linfoot failed "to even begin the process of obtaining a reverse mortgage or of listing the property for sale," the Trustee filed a "Motion to Dismiss for Failure to Comply with the Terms of the Plan" on August 15, 2011. Dkt. #35 in Case No. 09-38673-elp13 (Bankr. D. Or.). After notice to Linfoot and a hearing, the Trustee's motion was granted and the case was dismissed on November 3, 2011. Dkt. #41 in the Bankruptcy case.

On March 14, 2012, Linfoot filed a motion in the State Case, seeking to set aside the default judgment entered against him in

5 - FINDINGS AND RECOMMENDATION

2007. In the motion, Linfoot claimed he was never served properly in the case; he was unaware he had even been sued in the case; and he got no notice from the court that the judgment had been entered against him. Dkt. #16-4, ¶¶ 2-4. Linfoot claimed he only became aware of the judgment against him "in November of 2011, when [he] became aware [OCI] had filed a Motion for an order authorizing a sheriff's sale of [his] homestead property."[1]  *Id.*, ¶ 2. On May 9, 2012, the State Court entered a summary order denying Linfoot's motion to set aside the default judgment. Dkt. #16-5. On May 18, 2012, OCI obtained an Order from the State court, over Linfoot's written objections, authorizing levy and sale of Linfoot's interest in his residential property. Dkt. #16-8; *see* Dkt. #16-7, Linfoot's "Response and Objections" to OCI's motion for an order authorizing the sale.

Linfoot filed the present action on May 4, 2012. The defendants argue the case is barred by the applicable statutes of limitations, and by the doctrines of claim preclusion and issue preclusion.[2] Dkt. #15. Linfoot advances procedural challenges to the defendants' motion, which I will address first. He claims the defendants' motion is, in effect, a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). He notes Rule 12(c) allows a motion for judgment on the pleadings only "[a]fter the pleadings are closed." Because he had not yet

---

[1] This allegation obviously is belied by Linfoot's listing of the judgment in his bankruptcy schedules.

[2] Because the court finds Linfoot's claims are barred on other grounds, the court does not reach the defendants' claim preclusion and issue preclusion arguments.

6 - FINDINGS AND RECOMMENDATION

answered the defendants' Counterclaim at the time they filed their motion, he argues the pleadings were not yet "closed," and the motion was filed too early and must be dismissed as "incompetent, irrelevant and immaterial." Dkt. #21, p. 2; *see id.*, pp. 1-2. Linfoot's argument is not supported by the record. The defendants' motion is based on copies of documents filed in the State Case and in Linfoot's bankruptcy case. Therefore, the motion is not based solely on the pleadings, and is not brought under Rule 12(c).

Linfoot also argues the defendants' motion is brought too soon because discovery has not commenced in the case, and even if the defendants' motion had merit (which he disputes), they still would not be entitled to summary judgment at this early stage. *Id.*, p. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986): "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, **after adequate time for discovery** and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Emphasis by Linfoot.). Even if the court, viewing Linfoot's *pro se* response liberally, deemed Linfoot's argument as a request for discovery under Rule 56(d), the motion should be denied as futile. There are no facts Linfoot could develop through discovery that would change the outcome of the defendants' motion for summary judgment.

### ***A.   FDCPA and OUDCPA Claims***

Linfoot claims the defendants violated the FDCPA and OUDCPA in the following ways:

7 - FINDINGS AND RECOMMENDATION

1) The defendants failed to verify the debt upon Linfoot's request, which "invalidated" the defendants' right "to continue collection activities - including litigation - until and unless they had provided the verification demanded by [Linfoot]." Dkt. #2, ¶ 28.

2) Until the defendants complied with his request by validating the debt, the defendants "were legally required to cease all communications with [Linfoot]." *Id.*, ¶ 29. Thus, when the defendants filed their motion for authorization of a Sheriff's sale of Linfoot's real property, in November 2011, and then mailed Linfoot a copy of that motion, they violated the FDCPA's "proscription . . . against sending communications without prior validation and after notification of the request for validation." *Id.*, ¶ 30 (citing 15 U.S.C. §§ 1692g(b)[3], 1692c(c)[4]).

3) The defendants' mailing of the motion for default and motion for Sheriff's sale were "false and misleading"

---

[3]The statute provides, in pertinent part, that when a consumer timely "requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor," and mails the same to the consumer. 15 U.S.C. § 1692g(b).

[4]The statute requires a debt collector to cease most types of further communications with a consumer who "notifies [the] debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer[.]" 15 U.S.C. § 1692c(c). Notably, in this case, Linfoot's letter to Bernardi & Spencer *did not* ask them not to communicate with him further, and specifically stated, "This is not a refusal to pay, but a notice that your claim is disputed." Dkt. #2, Ex. 1.

8 - FINDINGS AND RECOMMENDATION

representations in violation of 15 U.S.C. § 1692e(5)[5], "to take an action, to wit, enforcement of a default judgment which was granted without prior service of the summons and complaint, that cannot legally be taken." Dkt. #2, ¶¶ 32, 34.

    4) The defendants' mailing of the "Motion for default" and the motion for Sheriff's sale violated 15 U.S.C. § 1692e(9)[6] "in that it simulated lawful process of a court of the State of Oregon, creating a false impression as to its authorization." Dkt. #2, ¶¶ 33, 35.

    Thus, Linfoot's claims arise from his allegation that the defendants failed to validate the debt upon request, and then continued to communicate with him regarding the debt by mailing copies of motions in the State Case, without providing the requested validation. He also alleges the defendants fraudulently represented to the State court that he had been properly served with process in the State Case.

    The FDCPA specifies that claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Ninth Circuit has held that a "discovery rule" applies to cases under the FDCPA, meaning the "limitations period begins to run when the plaintiff knows or has reason to know of the

---

[5] The statute prohibits a debt collector from using "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," including a "threat to take any action that cannot legally be taken. . . ." 15 U.S.C. § 1692e(5).

[6] Subsection (9) prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9).

9 - FINDINGS AND RECOMMENDATION

injury which is the basis of the action." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (internal quotation marks, citations omitted); *accord Townsend v. Chase Bank USA, N.A.*, 445 Fed. Appx. 920, 921 (quoting *Mangum*). There is no question that Linfoot knew of the judgment he seeks to attack here by, at the latest, the date he listed the judgment on his bankruptcy schedules; i.e., November 24, 2009. Thus, Linfoot's failure to bring his FDCPA claim prior to November 24, 2010, is fatal to his FDCPA claim in this case.

The OUDCPA similarly specifies a one-year limitation period for commencement of an action. ORS § 646.641(3). The Oregon Court of Appeals has explained that the limitations period does not begin to run until the debt collector employs a prohibited collection practice. *Bennett v. Reliable Credit Ass'n, Inc.*, 125 Or. App. 531, 534, 865 P.2d 496, 498 (1993). Linfoot argues the defendants' ongoing efforts to collect the debt in the State Case constitute continuing, separate violations of the FDCPA and OUDCPA, and because OCI obtained the order authorizing sale of Linfoot's residence in May 2012, he claims this action is timely.

Although some courts, interpreting the FDCPA, have recognized a "continuing violation theory," under which "each new communication begins a fresh statute of limitations period for the claim," *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007) (citing *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999)), subsequent communications regarding an existing claim do not "start a fresh statute of limitations period." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009) (citing *Nutter*; in turn citing, *inter alia*, *Campos*

10 - FINDINGS AND RECOMMENDATION

*v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000)). The court finds similar reasoning persuasive with regard to the OUDCPA. Furthermore, the court finds that mailing Linfoot copies of documents filed in the State Case were not "communications" with him constituting violations of either the federal or the state act. The Oregon Rules of Civil Procedure required OCI to serve a copy of its motions on Linfoot. *See* ORCP 90(A). *Cf. Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997) (holding, in circumstances where alleged violation of FDCPA involved the filing of a lawsuit in state court, that statute of limitations began to run on the date the complaint was filed).

For these reasons, the court finds Linfoot's claims under the FDCPA and OUDCPA are time-barred, and the defendants' motion for summary judgment on those claims should be granted.

### *B. Declaratory Judgment Claim*

In this claim, Linfoot asserts the defendants procured the default judgment in the State Case "by illegal actions . . . [and] intrinsic fraud and in violation of the Fourteenth Amendment right to due process in the form of notice and an opportunity to be heard before being deprived of property[.]" Dkt. #2, ¶ 41. He seeks a declaratory judgment that the judgment against him in the State Case is "void and unenforceable, and may not be made the basis of any lien on real or personal property, or in any other fashion provide the basis of any legal obligation enforceable against [Linfoot]." *Id.*, ¶ 42.

The defendants argue this claim is barred because it is merely "'creative labelling - styling [the] action as one for declaratory

11 - FINDINGS AND RECOMMENDATION

relief rather than for damages.'" Dkt. #15, p. 4 (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993)). The defendants assert that the same statutes of limitations applicable to Linfoot's FDCPA and OUDCPA claims also apply to his declaratory judgment claim. *Id.* (citations omitted).

The "general rule" under Oregon law holds "that when declaratory relief is sought as an alternative to other appropriate and otherwise available relief, the relevant limitations period for the declaratory judgment suit should be based on that of the underlying grounds for relief." *Brooks v. Dierker*, 275 Or. 619, 623, 552 P.2d 533, 535 (1976). Accordingly, because Linfoot's claims are barred by the statutes of limitation governing the FDCPA and OUDCPA, his claim for declaratory relief also would be barred on statute of limitations grounds, to the extent the claim "is sought as an alternative to other appropriate and otherwise available relief." *Id.* However, Linfoot does not assert his claim for declaratory relief in the alternative, nor is that claim based on any alleged violation of the federal and state debt collection statutes. Rather, he seeks to invalidate and render unenforceable the judgment of the State court in the State Case.

Linfoot's claim for declaratory relief is barred pursuant to the *Rooker-Feldman* doctrine, which the court has described as follows:

> The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923)[,] and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). . . .
>
> The doctrine holds that a United states district court is precluded from exercising

12 - FINDINGS AND RECOMMENDATION

> subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority (e.g., federal question, diversity), when the losing party in state court files suit in federal court after the state proceedings end, complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment. . . . The doctrine applies regardless of whether the state court proceeding afforded the federal court plaintiff a full and fair opportunity to litigate his claims. . . . [T]his jurisdictional bar extends to claims that are "inextricably intertwined" with those the state court has already decided.

*Brooks v. Vinci*, 2010 WL 3607778, at *2 (D. Or. July 29, 2010) (Hubel, MJ) (citations omitted).

The *Rooker-Feldman* doctrine precludes this court from exercising subject-matter jurisdiction over Linfoot's declaratory judgment claim, in which he seeks "review and rejection" of the judgment against him in the State Case. *Id.* Thus, the defendants' motion for summary judgment should be granted on this claim.

### *C. Tort Claim*

Linfoot also asserts a claim for intentional infliction of emotional distress ("IIED"). An IIED claim must "be commenced within two years" of the alleged injury. ORS § 12.110(1). Where the injury is "based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit." *Id.*

Even assuming, *arguendo*, that Linfoot could show the default judgment in the State Case was procured through fraud, the "discovery rule" for claims based on fraud that is embodied in ORS § 12.110(1) would require that he bring his claim within two years.

13 - FINDINGS AND RECOMMENDATION

As noted above, Linfoot knew of the judgment against him in the State Case no later than the date he listed the judgment on his bankruptcy schedules; i.e., November 24, 2009. Therefore, his failure to file suit by November 24, 2011, is fatal to this claim.

Moreover, the court also is precluded from exercising subject-matter jurisdiction over Linfoot's IIED claim by the *Rooker-Feldman* doctrine, discussed above. In order to find that Linfoot was injured by the "Defendants' wrongful, illegal and wilful actions" in the State Case, as Linfoot alleges, Dkt. #2, ¶ 52, the court necessarily would be required to find the judgment in the State Case was procured by fraud - in effect, "review and rejection" of the judgment in the State Case.

Thus, Linfoot's IIED claim is barred both on statute-of-limitations grounds and by the *Rooker-Feldman* doctrine, and the defendants' motion for summary judgment on this claim should be granted.

## *CONCLUSION*

For the reasons discussed above, I recommend the defendants' motion for summary judgment be **granted** as to all of Linfoot's claims.

## *SCHEDULING ORDER*

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due by **February 11, 2013.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then any response is due by **February 28, 2013.** By the earlier of

14 - FINDINGS AND RECOMMENDATION

the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

    IT IS SO ORDERED.

                        Dated this <u>23rd</u> day of January, 2013.

                        /s/ Dennis J. Hubel

                        _____
                        Dennis James Hubel
                        Unites States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION