IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAVID R. LINFOOT,

                 Plaintiff,

     v.

EDWARD P. BERNARDI et al.,

                 Defendants.

No. 3:12-cv-00799-HU

OPINION AND ORDER

MOSMAN, J.,

      On January 23, 2013, Magistrate Judge Hubel issued his Findings and Recommendation ("F&R") [23] in the above-captioned case, recommending that defendants' motion for summary judgment [14] be granted as to all of pro se plaintiff David Linfoot's claims. Mr. Linfoot filed objections [26], and defendants responded [27] to those objections. I agree that the statute of limitations on Mr. Linfoot's claims began running by November 24, 2009, when he listed the default judgment against him in his bankruptcy schedules. Because his claims are time-barred, I now ADOPT the F&R as modified below.

## FACTUAL BACKGROUND

      This case arises out of defendants' actions in *Oregon Collections, Inc. v. Linfoot*, No. 0702-01517, filed in the spring of 2007, in the Circuit Court for Multnomah County. Defendants Edward Bernardi and Jesse Spencer are attorneys, general partners in the law firm Bernardi &

Spencer, and shareholders and officers of Oregon Collections Inc. (Answer [13] ¶¶ 10–11.) Mr. Linfoot states that on March 25, 2007, he became aware that defendants were attempting to collect a debt from him on behalf of a third party. He claims to have sent defendants correspondence on March 28, 2007, requesting validation of that debt. (Compl. [2] ¶¶ 19, 29.) Mr. Linfoot alleges that rather than validating the debt as required by law, defendants proceeded to file the state case against him. (*Id*. [2] ¶ 23.) He also maintains that he was never properly served with process in the state case and that defendants' representation to the state court that he had been properly served was fraudulent. (*Id*. [2] ¶ 24.)

A default judgment was entered against Mr. Linfoot on July 2, 2007, for failure to appear in the state case. (Spencer Decl. [16] Ex. 1 at 1.) Mr. Linfoot subsequently filed for protection under Chapter 13 of the Bankruptcy Code. On November 24, 2009, he listed the lien created by that default judgment on his list of secured creditors in his bankruptcy schedules. (*Id*. [16] Ex. 2.) Mr. Linfoot then failed to comply with the terms of his Chapter 13 Plan, and the Trustee filed a Motion to Dismiss for Failure to Comply. That motion was granted, and the bankruptcy case was dismissed on November 3, 2011.

On March 14, 2012, Mr. Linfoot filed a motion in the state case, seeking to set aside the default judgment entered against him in 2007. In that motion, Mr. Linfoot claimed that (1) he was never served properly in the case, (2) he was unaware he had even been sued, and (3) he received no notice from the court that judgment had been entered against him. (*Id*. [16] Ex. 4 ¶¶ 2–4.) The state court denied this motion on May 9, 2012, and issued an order authorizing levy and sale of Mr. Linfoot's interest in his residential property on May 18, 2012. (*Id*. [16] Exs. 5, 8.)

Mr. Linfoot filed the instant action on May 4, 2012. He seeks "an order barring further prosecution of the State Court Action," a declaratory judgment that the state judgment is "void

and unenforceable" because it was obtained fraudulently, damages for violation of the Fair Debt

Collections Practices Act ("FDCPA") and the Oregon Unlawful Debt Collections Practices Act

("OUDCPA"), punitive and exemplary damages for "egregiously insidious" conduct, and

damages for intentional infliction of emotional distress ("IIED"). (Compl. [2].)

### LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may

file written objections. The court is not bound by the recommendations of the magistrate judge,

but retains responsibility for making the final determination. The court is generally required to

make a de novo determination regarding those portions of the report or specified findings or

recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court

is not required to review, de novo or under any other standard, the factual or legal conclusions of

the magistrate judge as to those portions of the F&R to which no objections are addressed. *See*

*Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121

(9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R

depends on whether or not objections have been filed, in either case, I am free to accept, reject,

or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

### DISCUSSION

### I.    FDCPA Claims

Mr. Linfoot claims that defendants violated the FDCPA in four ways. First, they failed to

verify the debt upon his request, which invalidated defendants' right to continue collection

activities, including all proceedings in the state case. *See* 15 U.S.C. § 1692g(b). Second, Mr.

Linfoot argues that until defendants complied with his request to validate the debt, they were

legally required to cease all communications with him. *See* 15 U.S.C. § 1692g(b). Defendants

allegedly violated this requirement by mailing him a copy of the motions they filed in state court.

3 – OPINION AND ORDER

Third, these motions violated 15 U.S.C. § 1692e(5) because defendants were not legally authorized to enforce the default judgment. Fourth, defendants' mailing of these motions violated 15 U.S.C. § 1692e(9) "in that it simulated lawful process of a court of the State of Oregon, creating a false impression as to its authorization." (Compl. [2] ¶¶ 28–35.)

Judge Hubel found that the FDCPA claims were time-barred. FDCPA claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Ninth Circuit has held that a "discovery rule" applies to FDCPA claims, meaning that the "limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009). As Judge Hubel reasoned, there is no question that Mr. Linfoot knew of the judgment he now seeks to attack when he listed it in his bankruptcy schedules on November 24, 2009. Therefore, the limitations period ended on November 24, 2010, long before Mr. Linfoot filed his complaint in this action.

Mr. Linfoot's principal objection is that after defendants failed to verify the debt, "each and every subsequent collection activity . . . was itself a separate and new 'triggering event,' for the purposes of determining whether the statute of limitations is a bar." (Objs. [26] at 4–5.) That may be true in improper form of communication cases where each communication is itself a new violation that potentially triggers a new limitations period. *See Joseph v. J.J. Mac Intyre Cos., LLC*, 281 F. Supp. 2d 1156, 1159–62 (N.D. Cal. 2003). But that is not Mr. Linfoot's case. The gravamen of Mr. Linfoot's complaint is that defendants failed to validate the debt and instead continued collection activities in violation of 15 U.S.C. § 1692g(b). Accordingly, this is not a case about defendants' communications per se; it is about cessation. When a consumer requests validation of the debt, the debt collector either ceases collection activities until it complies with §

1692g(b) or it does not. *See Derisme v. Hunt Leibert Jacobson, PC*, 2010 WL 4683916, at *5 (D. Conn. Nov. 10, 2010). Each subsequent collection activity does not trigger a new limitations period.

Furthermore, although Mr. Linfoot alleges that he requested verification, he does not allege that he notified defendants that he refused to pay the debt or that he wished them to cease further communications, as required by 15 U.S.C. § 1692c(c). And even if his allegations could be construed as a request to cease further communications, the motions filed in the state case were not "communications" in violation of the FDCPA. In fact, the Oregon Rules of Civil Procedure required defendants to serve a copy of their motions on Mr. Linfoot. *See* Or. R. Civ. P. 9A.

In light of the foregoing, I adopt Judge Hubel's finding on the FCPA claims: the Ninth Circuit's rule of discovery applies, Mr. Linfoot knew of these claims by November 24, 2009, and they are therefore time-barred.

## II.    OUDCPA Claims

Judge Hubel also found that Mr. Linfoot's OUDCPA claims were time-barred. The OUDCPA has a one-year statute of limitations. Or. Rev. Stat. § 646.641(3). The Oregon Court of Appeals has held that the limitations period does not begin to run until the debt collector "employs a prohibited collection practice." *Bennett v. Reliable Credit Ass'n, Inc.*, 865 P.2d 496, 498 (Or. Ct. App. 1993). In his briefing before Judge Hubel, Mr. Linfoot argued that the one-year statute of limitations had not run because defendants' ongoing efforts to collect the debt in the state case constituted continuing, separate violations of the FDCPA and OUDCPA. Although Judge Hubel acknowledged that some courts have recognized a continuing violation theory under the FDCPA, he noted that even under this theory, subsequent communications regarding an

5 – OPINION AND ORDER

existing claim do not "start a fresh statute of limitations period." *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009); *see also Nutter v Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007). Judge Hubel applied this reasoning to Mr. Linfoot's OUDCPA claims and found them time-barred.

Mr. Linfoot incorporates his FDCPA objections here, arguing that defendants' ongoing collection activities in the state case constitute continuing, separate violations of the OUDCPA. (Objs. [26] at 5.) Although Judge Hubel applied the analysis of *Reese* and *Nutter* to the OUDCPA claims, my analysis is more direct: (1) the motions filed in the state case were not "communications" in violation of the OUDCPA, and (2) Mr. Linfoot knew of any potentially prohibited collection practices by November 24, 2009. As a result, his OUDCPA claims are time-barred.

## III.    <u>Declaratory Relief Claim</u>

Mr. Linfoot contends that defendants procured the default judgment in the state case "by illegal actions . . . [and] intrinsic fraud . . . in violation of the Fourteenth Amendment right to due process in the form of notice and an opportunity to be heard before being deprived of property." (Compl. [2] ¶ 41.)  As a remedy, Mr. Linfoot seeks a declaration that the judgment against him in the state case is "void and unenforceable" (*Id*. [2] ¶ 42.)

Judge Hubel found that this claim was barred by the *Rooker-Feldman* doctrine. (F&R [23] at 12–13.) I disagree. "*Rooker-Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). The doctrine is not absolute, however. "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars

subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts

as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does

not bar jurisdiction." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). Therefore, *Rooker-*

*Feldman* "does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of

action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained

by that fraud." *Kougasian*, 359 F.3d at 1141.

      In Mr. Linfoot's claim for declaratory relief, he contends, in part, that defendants

procured the default judgment in the state case "by illegal actions . . . [and] intrinsic fraud . . . ."

(Compl. [2] ¶ 41.) Although Mr. Linfoot uses the phrase "intrinsic fraud," he also alleges that

defendants made fraudulent misrepresentations to the state court. For example, he alleges that

defendants fraudulently misrepresented that he had been properly served with process. (*Id*. [2] ¶

24.) That type of misrepresentation constitutes extrinsic fraud under Ninth Circuit precedent. *See*

*Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (defining extrinsic fraud as "conduct which

prevents a party from presenting his claim in court"). Therefore, *Rooker-Feldman* does not bar

Mr. Linfoot's claim for declaratory relief.

      Exercising subject matter jurisdiction over the claim for declaratory relief, I find that it is

time-barred. The general rule under Oregon law is that "when declaratory relief is sought as an

alternative to other appropriate and otherwise available relief, the relevant limitations period for

the declaratory judgment suit should be based on that of the underlying grounds for relief."

*Brooks v. Dierker*, 552 P.2d 533, 535 (Or. 1976). Although, it is not entirely clear from the

caselaw what it means to seek declaratory relief as an "alternative to other appropriate and

otherwise available relief," I believe that Mr. Linfoot's claim fits that description. The claim for

declaratory relief is based on the allegation that defendants procured a default judgment against

him through "illegal actions." (Compl. [2] ¶ 41.) According to the complaint, these allegedly illegal actions consisted primarily of violations of the FDCPA and OUDCPA. Thus, the legal wrongs alleged in the declaratory relief claim are largely the same as those alleged in the FDCPA and OUDCPA claims.

Of course, the form of remedy sought in the claim for declaratory relief is different from that sought in the FDCPA and OUDCPA claims, but that difference is not dispositive. *See TRM Corp. v. Paulsell*, 2002 WL 31549112, at *1 (D. Or. June 4, 2002) (citing *Brooks* and applying the two-year statute of limitations for fraud to a claim for declaratory relief despite the difference in form of remedy).

Because the allegations of the claim for declaratory relief parallel those of the FDCPA and OUDCPA claims, I find that "declaratory relief is sought as an alternative to other appropriate and otherwise available relief." As a result, the one-year limitations period for FDCPA and OUDCPA claims applies to the claim for declaratory relief. There is no question that Mr. Linfoot knew of the state court judgment when he listed it in his bankruptcy schedules on November 24, 2009. Therefore, the limitations period ended on November 24, 2010, and the claim for declaratory relief is time-barred.

## IV.    **Tort Claim**

Lastly, Mr. Linfoot asserts a claim for IIED. Judge Hubel found that this claim was barred by the statute of limitations and the *Rooker-Feldman* doctrine, since Mr. Linfoot's IIED claim would require the court to review and reject the state court judgment. (F&R [23] at 14.) As described above, *Rooker-Feldman* does not bar the exercise of subject matter jurisdiction in this case. I agree with Judge Hubel, however, that Mr. Linfoot's IIED claim is time-barred. An IIED claim must be commenced within two years of the alleged injury. Or. Rev. Stat. § 12.110(1).

Where the injury is "based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit." *Id*. As previously noted, Mr. Linfoot knew of the judgment against him in the state case no later than November 24, 2009. Therefore, the limitations period ended on November 24, 2011, and Mr. Linfoot's IIED claim is time-barred.

## CONCLUSION

For the reasons outlined in the F&R as modified in this opinion, defendants' motion for summary judgment is GRANTED as to all of Mr. Linfoot's claims.

IT IS SO ORDERED.

DATED this    11th    day of March, 2013.


/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

9 – OPINION AND ORDER